IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 3:14-cr-00429-TLW |
| | ) | |
| v. | ) | **GOVERNMENT'S RESPONSE IN** |
| | ) | **OPPOSITION TO METTS' MOTION** |
| JAMES R. METTS | ) | **TO DISMISS** |
| | ) | |
| _____ | ) | |

I.  Background ................................................................................................ 1

    A.  Lexington's Section 287(g) Federal Immigration Cooperative ............................ 1

    B.  Sheriff Metts Agreed with Friends to Affirmatively Assist Detained Illegal
        Aliens by Obstructing Immigration Proceedings in Return for Cash ................... 3

    C.  Indictment Counts and Elements of the Offenses ............................................ 4

        1.  Count 1 (Section 371 Conspiracy) ......................................................... 4

        2.  Counts 2-5 (Use of an Interstate Facility to Facilitate Bribery) .................... 6

        3.  Counts 6-9 (Honest Services Wire Fraud) ................................................ 8

        4.  Count 10 (Harboring Conspiracy) .......................................................... 8

II. Argument ................................................................................................... 9

    A.  Standard: A Defendant Must Show that the Indictment's Allegations Fail
        to State an Offense .................................................................................. 9

    B.  Counts 1 and 10 of the Indictment are Sufficient ........................................... 11

        1.  Count 1 – Section 371 Conspiracy to Violate Federal Law and Interfere
            with Government Function ................................................................. 12

        2.  Count 10 – Conspiracy to Harbor Illegal Aliens ....................................... 15

    C.  Metts' Attempt to Recast the Indictment's Allegations of Affirmative
        Criminal Actions as Mere Inaction that Constitutes Only a Contractual
        Dispute Should be Rejected ....................................................................... 16

Former Lexington County Sheriff James R. Metts agreed with friends to affirmatively assist certain detained illegal aliens by obstructing the Department of Homeland Security. Metts allowed friends to buy his active obstruction and interference the identification and processing of certain illegal aliens booked in the Lexington Detention Center. In doing so, Metts conspired to violate a variety of federal criminal laws; to defraud the government by impeding, impairing, defeating, and obstructing government immigration function; and to harbor, conceal, and shield from detection illegal aliens. The Grand Jury's Indictment more than sufficiently charges these offenses. Metts' attempt to recast his agreement to take affirmative action to interfere with and obstruct immigration proceedings so as to harbor illegal aliens as mere inaction that only constitutes a contractual dispute should be rejected.

## I.     Background

### A.     Lexington's Section 287(g) Federal Immigration Cooperative

In 2010, the Lexington County Sheriff's Department entered into a Section 287(g) Memorandum of Agreement with ICE. Indictment ¶8. Pursuant to this agreement, ICE authorized members of the Sheriff's Department to act as federal task force officers with immigration enforcement authority. Indictment ¶¶6-8. These federal task force officers (known as Designated Immigration Officers or 287(g) Task Force Officers) are federally authorized to perform immigration enforcement activities within the Lexington County Detention Center. *Id.* In so acting, these 287(g) Task Force Officers operated under the supervision of ICE supervisory officers (*i.e.*, an Enforcement Removal Officer or

Supervisory Deportation Detention Officer). Indictment ¶7. The Lexington County Sheriff's Department – and Metts – lacked the authority to direct, control, circumvent, or interfere with the 287(g) Task Force Officer's immigration enforcement duties. *Id.*

Pursuant to the 287(g) program, each arrestee that was booked into the detention center on state-law charges was evaluated to determine if the detainee was born in a foreign country. Indictment ¶9. The 287(g) Task Force Officers then screened these foreign-born detainees to determine their proper identification, background, and alienage based on biometric and biographical information. *Id.* Having the 287(g) Task Force Officers properly identify all aliens through the use of the computerized ICE system (referred to as ENFORCE/IDENT) permits ICE to understand an alien's immigration status in the United States, to know the alien's criminal background, access the danger to the community, and to track the alien in the future. Indictment ¶10-11.

Pending this identity screening by the 287(g) Task Force Officers, a limited-term immigration hold or detainer was placed on each potential illegal alien. Indictment ¶10. As a result of the screening, an arrestee is placed in an Interview Log if they are determined to be in the country legally or in a Detainer Log if they are identified as illegal and processed in the ICE system (ENFORCE/IDENT). *Id.*

Once identified as an illegal alien, an ICE supervisor – not a 287(g) Task Force Officer – determined the appropriate immigration treatment of the alien based on information from the ICE system (ENFORCE/IDENT). Indictment ¶12. For example, if the alien lacked any aggravating circumstances – such as serious criminal convictions or

prior deportations – then the alien could be released subject to reporting to immigration officials at a later time. *Id.*

**B.      Sheriff Metts Agreed with Friends to Affirmatively Assist Detained Illegal Aliens by Obstructing Immigration Proceedings in Return for Cash**

Beginning around Labor Day in September of 2011, METTS agreed with Frazier and Leon to use his position, power, and influence to affect the identification and processing of certain illegal aliens held in the Lexington County Detention Center. Indictment ¶14-15, 25. Based on that agreement, METTS directed and interfered, and attempted to direct and interfere, with the immigration enforcement activities of DHS, ICE, and the Lexington County officers serving as 287(g) Task Force Officers. Indictment ¶14-15, 25. In return for his agreement and assistance, METTS accepted cash payments. *Id.*

Leon would notify Frazier of the arrest of one of his employees. Indictment ¶15, 25. Frazier would the contact Metts, who would contact his command staff and other employees to instruct that preferential treatment be provided by the 287(g) Task Force Officers to those specific illegal aliens. Indictment ¶15, 25. For example, on September 16, 2011, an illegal alien was arrested by West Columbia Police Department on state-law charges. Indictment ¶15(b). The next morning, Leon called Frazier to discuss contacting Metts for assistance with the illegal alien who had been arrested and booked into the Lexington Detention Center. Indictment ¶¶15(b), 25(f). Frazier then called Metts and Metts agreed to assist with the illegal alien. Indictment ¶¶15(b), 25(g). Metts then spoke with his staff about providing special treatment to the illegal alien. Indictment ¶¶15(b),

24(h-i). As a result of Metts' affirmative intervention, that illegal alien was not identified, entered into the ICE system (ENFORCE/IDENT), or processed to determine the appropriate immigration treatment. Indictment ¶¶15(b), 25(i). Frazier then paid Metts cash obtained from Leon in return for Metts' agreement and assistance. Indictment ¶¶15(b), 25(j).

### C.  Indictment Counts and Elements of the Offenses

#### 1.  Count 1 (Section 371 Conspiracy)

Count 1 charges Metts with conspiring to violate several federal laws, as well as to interfere with government function. Section 371 requires the Government prove:

- First, two or more persons agreed to do something which federal law prohibits or which defrauds the United States by impeding, impairing, defeating, or obstructing government function.
- Second, the defendant knowingly and voluntarily joined the conspiracy.
- Third, one of the members of the conspiracy performed one or more of the overt acts charged in the indictment.[1]

The three prohibiting federal laws are: (1) Use of an Interstate Facility to Facilitate Bribery, in violation Title 18, United States Code, Section 1952(a)(3) ; (2) Use of Interstate Wires to Further Scheme to Defraud Citizens of Lexington County of their Right to Honest Services, in violation of Title 18, United States Code, Sections 1343 and

---

[1] *United States v. Singh*, 518 F.3d 236, 252 (4th Cir. 2008) (explaining that a Section 371 conspiracy requires that: "(1) there was an agreement to violate [federal law]; (2) the defendants knowingly and willingly participated in that conspiratorial endeavor; and (3) an overt act was committed in furtherance of the conspiracy); *see also United States v. Cardwell*, 433 F.3d 378, 390 (4th Cir. 2005) ("To establish a conspiracy under § 371, the Government must prove (1) an agreement between two or more people to commit a crime, and (2) an overt act in furtherance of the conspiracy. The existence of a tacit or mutual understanding between conspirators is sufficient evidence of a conspiratorial agreement.") (internal quotation marks and citations omitted). *See also United States v. Tedder*, 801 F.2d 1437, 1446 (4th Cir. 1986); *United States v. Norris*, 749 F.2d 1116, 1121 (4th Cir. 1984).

1346; and (3) Obstructing Proceedings before United States Department of Homeland Security, in violation of Title 18, United States Code, Section 1505.

The offense of Use of an Interstate Facility to Facilitate Bribery (18 U.S.C. §1952) requires:

- First, the defendant used any facility in interstate commerce.
- Second, the defendant did so with the intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of the activity described in Counts 2-5 of the Indictment.
- Third, the activity described in Counts 2-5 of the Indictment was bribery under the laws of South Carolina.
- Fourth, after such use of facility in interstate commerce, the defendant knowingly performed or attempted to perform an act to promote, manage, establish, carry on, or attempt to promote, manage, establish, or carry on, the activity described in Counts 2-5 of the Indictment.[2]

The offense of Use of Interstate Wires to Further Scheme to Defraud Citizens of Lexington County of their Right to Honest Services (18 U.S.C. §§1343, 1346) requires:

- First, the defendant knowingly devised or participated in a scheme or artifice to defraud the public of its right to the honest services of a public official through bribery or kickbacks.
- Second, in advancing, furthering, or carrying out the scheme or artifice to defraud, the defendant transmitted, or caused to be transmitted, any writing, signal, or sound by means of a wire communication in interstate commerce.[3]

The offense of Obstructing Proceedings before United States Department of Homeland Security (18 U.S.C. §1505) requires:

- First, there was a proceeding being conducted by any department or agency of the United States.
- Second, the defendant knew of the pending proceeding.
- Third, the defendant endeavored to influence, obstruct, or impede the proceeding.

---

[2] *See*, *infra*, n.6.

[3] *See*, *infra*, n.9.

- Fourth, the defendant did so corruptly.[4]

The offense of conspiracy to defraud the United States (18 U.S.C. §371) requires:

- First, two or more persons agreed to impede, impair, defeat, or obstruct government function by deceit, craft, trickery, or by means that are dishonest.
- Second, the defendant knowingly and voluntarily joined the conspiracy.
- Third, that one of the members of the conspiracy performed one or more of the overt acts charged in the indictment.[5]

### 2. Counts 2-5 (Use of an Interstate Facility to Facilitate Bribery)

Counts 2-5 charge Metts with substantively violating Section 1952 (Use of an Interstate Facility to Facilitate Bribery), which requires the Government to prove:

- First, the defendant used any facility in interstate commerce.
- Second, the defendant did so with the intent to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of the activity described in Counts 2-5 of the Indictment.
- Third, the activity described in Counts 2-5 of the Indictment was bribery under the laws of South Carolina.
- Fourth, after such use of facility in interstate commerce, the defendant knowingly performed or attempted to perform an act to promote, manage, establish, carry on, or attempt to promote, manage, establish, or carry on, the activity described in Counts 2-5 of the Indictment.[6]

---

[4] *See* Rushky, *District of South Carolina Pattern Jury Instructions* (section addressing the 18 U.S.C. §1505); *Arthur Andersen LLP v. United States*, 544 U.S. 696, 706 (2005) (defining corruptly).

[5] *See*, *supra*, n. 1; *see also United States v. Scott*, 37 F.3d 1564, 1575-76 (10th Cir. 1994); *United States v. Arch Trading*, 987 F.2d 1087, 1091-92 (4th Cir. 1993).

[6] O'Mally, Grenig, and Lee, *2A Fed. Jury Prac. & Instr.* § 54:03 (6th ed.) (available on Westlaw); *United States v. Hayes*, 775 F.2d 1279, 1282 (4th Cir. 1985). Title 18, United States Code, Section 1952(a)(1) and (3) provides:

Whoever … uses … any facility in interstate … commerce, with intent to – (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform . . . an act described in paragraph . . . (3), [commits a crime against the United States].

As used in Section 1952(a)(1) and (3), the term "unlawful activity" includes "bribery . . . in violation of the laws of the State in which committed." 18 U.S.C. §1952(b).

South Carolina state law has two distinct bribery statutes, South Carolina Code Sections 8-13-705(B) and 16-9-220. The government must demonstrate three points to prove that defendant's activity was unlawful under South Carolina Code Section 8-13-705(B):

- First, the defendant is a public official, public member, or public employee.
- Second, that the defendant, directly and indirectly, knowingly accepted, received, or agreed to receive something of value for himself or another.
- Third, the defendant did so in return for being influenced in the discharge of his official responsibilities.[7]

The government must demonstrate three points to prove that defendant's activity was unlawful under South Carolina Code Section 16-9-220:

- First, the defendant is an executive officer.
- Second, the defendant corruptly accepted a gift or gratuity or a promise to make a gift.
- Third, the defendant did so under an agreement or with an understanding that his vote, opinion or judgment shall be given in any particular manner, cause or proceeding which is or may be by law brought before him in his official capacity.[8]

---

[7] South Carolina Code §8-13-705(B) defines bribery as:

A public official … may not, directly or indirectly, knowingly ask, demand, exact, solicit, seek, accept, assign, receive, or agree to receive anything of value for himself or for another person in return for being … influenced in the discharge of his official responsibilities.

[8] South Carolina Code Section 16-9-220 defines bribery as:

Every executive … officer who corruptly accepts a gift or gratuity or a promise to make a gift … to such an officer under an agreement or with an understanding that his vote, opinion or judgment shall be given in any particular manner or on any particular side of any question, cause or proceeding which is or may be by law brought before him in his official capacity.

### 3.     Counts 6-9 (Honest Services Wire Fraud)

Counts 6-9 charge Metts with substantively violating Sections 1343 and 1346 (Use of Interstate Wires to Further Scheme to Defraud Citizens of Lexington County of their Right to Honest Services), which requires the Government to prove:

- First, the defendant knowingly devised or participated in a scheme or artifice to defraud the public of its right to the honest services of a public official through bribery or kickbacks.
- Second, in advancing, or furthering, or carrying out the scheme or artifice to defraud, the defendant transmitted, or caused to be transmitted, any writing, signal, or sound by means of a wire communication in interstate commerce.[9]

### 4.     Count 10 (Harboring Conspiracy)

Count 10 charges Metts with conspiring to harbor illegal aliens in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and 1324(a)(1)(A)(iii), which requires:

- First, that two or more persons entered an agreement with the purpose to harbor, conceal, and shield from detection, or attempt to harbor, conceal, and shield from detection an illegal alien.
- Second, that the defendant knowingly and voluntarily joined the conspiracy.

---

[9] *United States v. Jefferson*, 674 F.3d 332, 366 (4th Cir. 2012) (stating that "essential elements of a wire fraud offense are (1) the existence of a scheme to defraud and (2) the use of ... a wire communication in furtherance of the scheme"); *see also id.* at n.45 (appearing to criticize the use of four elements in a jury instruction instead of two). *See also United States v. Harvey*, 532 F.3d 326, 333 (4th Cir. 2008). The wire fraud statute, 18 U.S.C. §1343, prohibits, in relevant part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, . . . transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice [commits a crime against the United States]

Section 1346 of Title 18 provides that, for the purposes of Section 1343, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

- Third, that the defendant knew or acted in reckless disregard of the fact that the illegal alien was not lawfully in the United States.[10]

## II. Argument

### A. Standard: A Defendant Must Show that the Indictment's Allegations Fail to State an Offense

"An indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Ali*, 735 F.3d 176, 193 (4th Cir. 2013) (*quoting Hamling v. United States*, 418 U.S. 87, 117 (1974)). Thus, "[a]n indictment returned by a legally constituted and unbiased grand jury, ... if valid on its face, is enough to call for trial of the charges on the merits." *United States v. Wills*, 346 F.3d 476, 488-89 (4th Cir. 2003).

---

[10] *See United States v. Khanani*, 502 F.3d 1281, 1287, 1289 (11th Cir. 2007) (finding the district court properly instructed the jury on substantive harboring of illegal aliens: "That an alien entered or remained in the United States in violation of law; second, that the defendant knowingly concealed, harbored or shielded from detection the alien within the United States; and third, that the defendant either knew or acted in reckless disregard of the fact that the alien entered or remained in the United States in violation of law."); *see also United States v. Ye*, 588 F.3d 411, 414-17 (7th Cir. 2009). Title 8, United States Code, Section 1324, reads in relevant part:

> Any person who – engages in any conspiracy to commit any of the preceding acts … shall be punished as provided in subparagraph (B).

The preceding act (*i.e.*, substantive offense), as charged in the Indictment, is subsection (a)(1)(A)(iii), which reads:

> knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation

Under Fourth Circuit law, a conspiracy requires proof of "(1) an agreement to [commit the offense]; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy." *United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996) (en banc); *see also United States v. Castillo-Gamez*, 466 Fed. Appx 859, 864 (11th Cir. 2012).

While it is generally sufficient that the indictment describes the offense by using the language of the statute, that general description "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Hamling*, 418 U.S. at 117–18; *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002) (holding that that indictment sufficiently charged the elements of bank fraud). Thereby, an indictment puts a defendant on notice of the charges and provides the circumstances related to the charges.

"[T]he law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *United States v. R. Enters., Inc.*, 498 U.S. 292, 300 (1991); *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring in judgment). To warrant a dismissal of an Indictment returned by a grand jury the defendant must demonstrate that the allegations in the indictment fail to state an offense as described in the elements of that crime. *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004). A District Court, in determining a motion to dismiss an indictment, is required to accept the indictment's allegations as true. *United States v. Farmer*, 370 F.3d 435, 441 (4th Cir. 2004); s*ee United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012) (explaining that a district court is limited to the allegations as stated in the indictment in a motion to dismiss and may not decide the motion on additional facts that may be presented at trial) *See also United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) (noting that because a challenge to the indictment does not test the government's

case, "[c]ourts should ... avoid considering evidence outside the indictment when testing the indictment's legal sufficiency").[11]

The Grand Jury's Indictment here details the conspiracy that Metts entered: an agreement to affirmatively assist certain illegal aliens, in return for cash, by interfering with the identification and processing of those illegal aliens by Section 287(g) Task Force Officers and their ICE supervisors. Accepting the Indictment on its face, viewing it as a whole, and taking the allegations as true unmistakably leads to the conclusion that the Grand Jury's Indictment sufficiently alleges that Metts committed the charged crimes.

### B. Counts 1 and 10 of the Indictment are Sufficient

Counts 1 and 10 establish the elements of the overlaying conspiracies, the objects of the conspiracies, and the factual circumstances involved. In doing so, Metts has been apprised of the essential facts that the Government will prove in trial. Thus, Metts may attempt to defend himself in the case at bar and, in the future, to avoid double jeopardy.

Metts' agreement with Leon and Frazier is, in and of itself, the crime of conspiracy charged in Counts 1 and 10. *See United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996) (en banc) ("the gravamen of the crime of conspiracy is an agreement to

---

[11] The defense inappropriately asks this Court to consider a myriad of outside sources in an attempt to have a mini-trial and circumvent the jury process (effectively seeking a variation on a summary judgment motion). It is inappropriate to conduct such an inquiry into the evidence to be presented as the scope of the motion to dismiss is limited to the face of the Indictment. *See United States v. Bergrin*, 650 F.3d 257, 265-68 (3d Cir. 2011) (stating that consideration of a motion to dismiss the indictment as being insufficient, the court's "determination must be based on whether the facts alleged in the indictment, if accepted as entirely true, state the elements of an offense and could result in a guilty verdict" and noting that "[a] ruling on a motion to dismiss is not, however, a permissible vehicle for addressing the sufficiency of the government's evidence."); *United States v. Marbelt*, 129 F.Supp.2d 49, 56 (D.Mass. 2000) (stating "'[a] motion to dismiss an indictment is not a device for a summary trial of the evidence, but rather is directed only to the question of the validity of the indictment on its face'").

effectuate a criminal act."). The agreement here by Metts was for the conspiracy to take *affirmative action* to interfere, obstruct, and subvert the identification and processing of certain illegal aliens by the 287(g) Task Force Officers and their ICE supervisors.[12] In doing so, Metts conspired to violate a variety of federal laws (18 U.S.C. § 371), to interfere with federal government function (18 U.S.C. § 371), and to harbor illegal aliens (8 U.S.C. §1324(a)(1)(A)(v)(I)).

1.     **Count 1 – Section 371 Conspiracy to Violate Federal Law and Interfere with Government Function**

Section 371 makes it a crime to conspire to violate a federal law and/or to defraud the United States by interfering with federal government function. *See*, *supra*, Section I(C)(1) (setting forth the elements of the offense). Thus, Section 371 prohibits conspiring in violation of two clauses: (i) committing any offense against the United States; and/or (ii) defrauding the United States. The first clause includes a conspiracy to violate any federal criminal law. The criminal laws Metts conspired to violate in Count 1 are Section 1952 (Use of Interstate Facility to Facilitate Bribery), Sections 1343 and 1346 (Honest Services Wire Fraud), and Section 1505 (Obstructing Government Proceedings). Indictment ¶17(a-c). The second clause – to defraud the United States – "reaches any

---

[12] There is no requirement that the actions agreed to be taken in furtherance of the conspiracy must themselves be unlawful standing alone. *United States v. Fleschner*, 98 F.3d 155, 159 (4th Cir. 1996) (an overt act is any act, even one which may be entirely innocent when considered alone, but which is knowingly committed by a conspirator in an effort to accomplish some object of the conspiracy.); *see also Kitt v. United States*, 132 F.2d 920, 921 (4th Cir. 1942) (noting that "the overt act … need not be itself a crime"). While the proof in this case will show that Metts' agreed upon actions were indeed illegal – accepting bribes, interfering with federal governmental function, etc. – it would be of no effect if his actions were themselves legal but taken in furtherance of the unlawful objectives.

conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government." *Dennis v. United States*, 384 U.S. 855, 860 (1966); *United States v. Arch Trading Co.*, 987 F.2d 1087, 1091-92 (4th Cir. 1993).[13] Metts is charged in Count 1 with interfering with the identification and processing of illegal aliens by the United States and DHS. Indictment ¶17(d).

The Indictment sufficiently charges Metts with a conspiracy to violate federal law in Section 1952 (Use of Interstate Facility to Facilitate Bribery), Sections 1343 and 1346 (Honest Services Wire Fraud), and Section 1505 (Obstructing Government Proceedings). Metts apparently concedes that Count 1's Section 371 conspiracy to violate Section 1952 and Sections 1343 and 1346 is appropriately charged. Metts only challenges the conspiracy to violate Section 1505. As the Indictment describes, Metts conspired "to corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under which a pending proceeding to identify and process illegal aliens was being had before the United States Department of Homeland Security." Indictment ¶17(c). That language alone is sufficient to place Metts on notice of the conspiracy with which he is charged: to take affirmative action to corruptly – that is, dishonestly with the specific intent to undermined the integrity of the proceeding – obstruct and impede the identification and processing of certain illegal aliens. As the Fourth Circuit has made clear, even completely legal means can be

_____

[13] In essence, the term "defraud" as used in Section 371 not only reaches financial loss but also protects the integrity of the United States and its agencies, programs and policies. *United States v. Burgin*, 621 F.2d 1352, 1356 (5th Cir. 1980) (finding indictment properly charged a Section 371 conspiracy based on a public official using his political influence as elected official, in exchange for remuneration, to enable others to get a contract funded by federal funds).

criminally obstructive if the defendant had corrupt intent. *United States v. Mitchell*, 877 F.2d 294, 299 (4th Cir. 1989) (the focus in obstruction cases is whether the defendant "had the requisite corrupt intent to improperly influence the investigation, not on the means the defendant employed in bringing to bear this influence"); *see also United States v. Baker*, 611 F.2d 964, 967-69 (4th Cir. 1979) (advising a grand jury witnesses to assert their constitutional fifth amendment right can constitute obstruction under § 1503 if done with corrupt intent).[14] Moreover, the Indictment details the specific actions that Metts took – and agreed to take – to obstruct the immigration proceeding in return for receiving cash.[15]

---

[14] The Fourth Circuit in *Mitchell*, upheld guilty verdicts under Section 1505 based on both the "well-established rule that the omnibus clauses of federal obstruction statutes should be broadly construed" and the principle that obstruction does not require means that are illegal in themselves. 877 F.2d at 299-300. There, the defendants claimed to be able to stop a congressional investigation through personal access with their uncle in Congress and received payments for doing so. While lobbying a member of Congress is not itself illegal, the evidence of hand-delivered payments paid on promises that the defendants could "get rid of the problem," "more than adequately supports the jury's conclusion that appellants were not paid for their advocacy skills, but rather were paid for their ability to thwart the investigation solely through their ties to their uncle." *Id.* The court thus concluded, such "a use of influence constitutes a corrupt endeavor punishable under § 1505." *Id.*

[15] Metts' acceptance of cash for his agreement, his intent to aid the illegal aliens, and his actions – as detailed in the Indictment – demonstrates the illegal and corrupt nature of the conspiracy. The jury can look at the payments to prevent the illegal aliens from being identified and processed as persuasive evidence of the unlawful nature of the conspiracy. *See United States v. Discua*, 189 Fed. Appx 202, 205 (4th Cir. 2006) (the acceptance of payment for stolen baby formula allowed the trier of fact to infer that the defendant knew the formula was stolen and therefore knew of the unlawful nature of the conspiracy); *see also United States v. Paccione,* 949 F.2d 1183, 1199 (2d Cir. 1991) ("These statements by [the defendant], which the jury was plainly free to interpret as offering bribes, were relevant to show a consciousness of guilt ... and thereby to cast doubt on his lack-of-intent defense."). Thus, even for charges for which a payment of cash is not a necessary element, the bribes paid by Leon and Frazier to Metts show the illegal nature of the conspiracy to violate a variety of federal laws (18 U.S.C. § 371), to interfere with federal government function (18 U.S.C. § 371), and to harbor illegal aliens (8 U.S.C. §1324(a)(1)(A)(v)(I)).

Very similarly, Metts conspired to defraud the United States by impeding, impairing, defeating, and obstructing the identification and processing of illegal aliens by the United States and DHS. This agreement between the co-conspirators was to take affirmative action to impede and obstruct the identification and processing of certain illegal aliens. On numerous occasions, Metts agreed to take – and did take – affirmative steps to interfere with the task force officers who were investigating potential illegal-alien arrestees. This agreement to assist certain illegal aliens by preventing their identification and processing constitutes a conspiracy to obstruct the federal immigration program's efforts to identify and process illegal aliens. *Cf. Kitt*, 132 F.2d at 921; *Burgin*, 621 F.2d at 1356.

### 2. Count 10 – Conspiracy to Harbor Illegal Aliens

Count 10 charges Metts with conspiring to harbor, conceal, and shield from detection known illegal aliens. *See*, *supra*, Section I(C)(4) (setting forth the elements of the offense). As with the conspiracy charged in Count 1, the charged agreement between the co-conspirators is to take affirmative action to harbor, conceal, and shield from detection certain illegal aliens by interfering with the identification and processing of those illegal aliens by the task force officers and their ICE supervisors. As the Indictment charges and the evidence will show, Metts agreed to take action so that illegal aliens would not be identified or processed by ICE. Indictment ¶¶14-15, 25. The agreed upon course of action is just as illegal as a Sheriff who affirmatively intervenes to prevent a fugitive from being fingerprinted so as to avoid others learning the fugitive's identity and status. Metts' agreement to take actions designed to prevent ICE from detecting and

identifying illegal aliens constitutes harboring, concealment, and shielding from detection. *See United States v. Rubio-Gonzalez*, 674 F.2d 1067, 1072 (5th Cir. 1982) (defendant's actions of warning illegal aliens of law enforcement so that they would not be detected constituted harboring).[16]

### C. Metts' Attempt to Recast the Indictment's Allegations of Affirmative Criminal Actions as Mere Inaction that Constitutes Only a Contractual Dispute Should be Rejected

Metts' motion attempts to argue that his affirmative interference with federal immigration function was merely a breach of contract because Metts had no other legal obligation to "cooperate with ICE" and "report encountered illegal aliens." Motion at 11. This argument fails to understand that Metts is charged with conspiring to take *affirmative action* to interfere, impede, and obstruct the identification and processing of certain illegal aliens by 287(g) Task Force Officers and ICE supervisors.[17] Regardless of whether Metts was *required* to report illegal aliens *himself*, his conspiratorial agreement

---

[16] The Fourth Circuit, like other courts, follows an expansive understanding of harboring. *See United States v. Batjargal*, 302 Fed. Appx 188, 191 (4th Cir. 2008) (finding a defendant "harbored [an illegal alien] by providing her with a place to live, an automobile, a cell phone, auto insurance and gym membership"); *United States v. Cantu*, 557 F.2d 1173, 1175-76, 1180 (5th Cir. 1977) (upholding harboring conviction based on defendant's instructions to employees to take action to avoid identification by immigration authorities); *see also United States v. Miles*, 10 Fed. Appx 113, 114–15 (4th Cir. 2001) (finding sufficient evidence of harboring a fugitive where defendant lied to law enforcement, vehicles associated with the fugitive had been observed for several days in the parking lot of the defendant's apartment, and fugitive was found in defendant's residence); *United States v. Udey*, 748 F.2d 1231, 1236 (8th Cir. 1984) (finding sufficient evidence of harboring a fugitive where the defendant instructed his daughter to remain silent about the fugitive's presence and allowed the fugitive to stay in his home).

[17] Moreover, even inaction by Metts – done in furtherance of the conspiracy with corrupt intent – would suffice to prove the charged offenses. *See Mitchell*, 877 F.2d at 299 (the focus in obstruction cases is whether the defendant "had the requisite corrupt intent to improperly influence the investigation, not on the means the defendant employed in bringing to bear this influence"). Indeed, in *Mitchell*, the Court upheld an obstruction conviction where no evidence was offered that the defendants took action to actually influence the investigation. *Id.* at 297.

to take affirmative action to interfere with others (*i.e.*, 287(g) Task Force Officers and ICE supervisors) in their identification of illegal aliens is a violation of Counts 1 and 10.

The premise of Metts' argument – that that the Government's theory of prosecution solely depends on the MOA or the existence of a contractual or legal obligation for Metts to personally cooperate with ICE – is mistaken. Regardless of whether Metts was obligated to affirmatively cooperate with ICE,[18] his conspiratorial agreement to take affirmative action to interfere and obstruct the identification and processing of certain illegal aliens is criminal. *Cf. United States v. Colton*, 231 F.3d 890, 890 (4th Cir. 2000) (holding that even under the heightened fraud standard no duty is required where affirmative actions of concealment occurred). Lexington County's Section 287(g) agreement does not serve to immunize Metts as a public official who conspired to interfere with the federal immigration function or harbor illegal aliens.

Local law enforcement regularly enters into agreements with federal agencies provide officers to serve as federal task force officers to perform federal functions. As an analogous example, a sheriff who agrees with the DEA to provide a deputy to serve on a federal drug task force may not later instruct that deputy to ensure that the home of a

---

[18] The MOA does require LCSD – the agreement is not with Metts personally but with the Department – to "enhance the safety and security of communities by focusing resources on *identifying and processing* criminal aliens who pose a threat to public safety or a danger to the community." MOA at 1. While the MOA directs that "detention" will be prioritized in conformity with ICE detention priorities, MOA at 2, 17, the identification and processing precedes any detention determination. Indictment at ¶12. The MOA further requires that immigration activities are to be conducted only with ICE supervision and LCSD retains supervision only to other aspects of employment by the Task Force Officers. MOA at 6. Should Metts or any other member of the LCSD interfere with the performance of the functions described in the MOA, that action may be in violation of federal obstruction laws (depending on the state of mind of the putative defendant). Such interference is not immunized by the existence of the contract and the remedy is not limited to contractual remedies.

targeted drug dealer (who happens to be a friend of the sheriff) not be searched by the federal task force without prior warning to the drug dealer. Regardless of the terms of the agreement with the DEA, such a sheriff has impeded the federal task force, obstructed the federal law enforcement function, and aided the drug dealer's operations. So too here, Metts is criminally responsible for his agreement to affirmatively seek to have his 287(g) Task Force Officers and their ICE supervisors not properly identify and process certain illegal aliens because they worked for a friend of Metts. *Cf. United States v. Carpenter*, 2012 WL 292480, *3 (W.D. La.) (affirming a police chief's conviction for obstruction of justice based on the chief's interference with a federal task force officer executing an arrest warrant on a friend of the chief), affirmed by *United States v. Carpenter*, 500 Fed. Appx 331 (5th Cir. 2012).

Metts' conspiracy to interfere, impede, and obstruct the identification and processing of certain illegal aliens would state criminal offenses under Counts 1 and 10 even if no Section 287(g) program had existed in Lexington County.[19] If a Sheriff that has not entered a Section 287(g) MOA is called by ICE and informed that ICE is coming to identify and process an illegal alien detained in his facility, the Sheriff has three options: (1) He may affirmatively assist ICE by requesting that the detention center hold

---

[19] Metts attempts to analogize his own actions with that of the defendant with the Third Circuit split decision of *Galarza v. Szalczyk*, 745 F.3d 634 (3rd Cir. 2014). But in *Galarza*, the Court addressed the inapposite circumstance in which no Section 287(g) agreement was in place but the Sheriff agreed to assist ICE by honoring a detainer. Even if an ICE detainer is a request, *Galarza* has no bearing on a Sheriff that conspiratorially agrees to take affirmative action to impede federal function. More fundamentally, *Galarza* addresses a federal detainer to house identified illegal aliens and not earlier stage of identification and processing of illegal aliens with which Metts interfered. Finally, pursuant to the MOA, LCSD affirmatively agreed to comply with detainers and to be paid by the federal government when such detainers were in effect on an illegal alien housed at LCDC.

that illegal alien until ICE arrives; (2) He may take no action, neither assisting nor impeding ICE; or (3) He may affirmative impede ICE by instructing the detention center to release the illegal alien before ICE is able to arrive. The third example plainly violates the law. By taking active steps to harbor /conceal the illegal alien and obstruct the identification and processing by federal authorities, that Sheriff would have committed criminal acts. In particular, that Sheriff would have violated Section 1505's prohibition on endeavoring to influence or obstruct a federal proceeding, he would have defrauded the Government by impairing and obstructing the lawful function of the government, and he would have harbored an illegal alien.[20] Counts 1 and 10 in the Indictment do not emanate from the MOA or the lack of abiding by its terms but from the conspiracy to circumvent a known federal program operating at the Lexington County Detention Center through the 287(g) Task Force Officers and their supervisors.

The defendant relies heavily on *United States v. Steffan*, 687 F.3d 1104 (8th Cir. 2012), where the Eighth Circuit found that the Indictment did not sufficiently allege a scheme to defraud under the bank, mail, and wire fraud statutes. There, the Court found that actionable fraud cannot exist where the only charged conduct was nondisclosure

---

[20] Analogously, when a Sheriff receives a courtesy call from the FBI informing the Sheriff that a federal search warrant will be executed in his county the next morning, the Sheriff has three options: (1) affirmatively assist the FBI by sending deputies to assist; (2) do nothing by neither assisting nor harming the FBI's execution of the search warrant; and (3) affirmatively impeding or obstructing the FBI by contacting the drug dealer and alerting him to the FBI's impending actions. Option 1 is permissible as the sheriff may cooperate. Option 2 would likely not present violations of federal law based on the lack of any obligation to assist, so long as the Sheriff did not do so in furtherance of a conspiracy to obstruct with corrupt intent. *See Mitchell*, 877 F.2d at 299. However, it would be unlawful for the Sheriff to intercede and alert the drug dealer to the impending warrant execution (option 3). *Cf. United States v. Romero*, 518 Fed. Appx 648, 651 (11th Cir. 2013) (discussing tipping off co-conspirators to a police raid as evidence of membership into the criminal conspiracy).

without a fiduciary, statutory or other independent duty to disclose. *Id.* at 1114-16. This fraud case addressing the actions of a private citizen defendant has no bearing on Metts' conspiracy to influence federal government function and proceedings or the conspiracy to harbor an illegal alien. First, the charged conspiracies that Metts challenges are not fraud-based while *Steffan*'s ruling addresses only the particular strictures of common-law fraud. *Cf. Dennis*, 384 U.S. at 860 (Section 371 is not limited to common-law fraud). Second, the challenged portions of Metts' Indictment do not depend on non-disclosure (or inaction) as in *Steffan* but are based on an agreement to affirmatively act to interfere with ICE's identification and processing of certain illegal aliens. Third, unlike the private citizen defendant in *Steffan*, Metts did owe a fiduciary duty to the public he serves. *See Skilling v. United States*, 561 U.S. 358, 408 n.41 (2010) (citing *United States v. Mandel*, 591 F.2d 1347 (4th Cir. 1979)). Finally and perhaps most importantly, *Steffan* and the cases upon which it relies (including the Fourth Circuit's decision in *Colton*), recognize that affirmative actions – as opposed to mere silence with no duty to disclose – can constitute fraud regardless of the existence of any duty. In the fraud context, the Courts recognize that where affirmative acts are taken to conceal information, no other duty need be shown to establish fraud. Here, the Grand Jury found that Metts agreed to take affirmative action to assist Leon and Frazier with illegal aliens; as such, even under the heightened standard of fraud, Metts' agreement to take affirmative action would establish his criminal liability. *See Colton*, 231 F.3d at 900 ("no fiduciary relationship, no statute, no other independent legal duty to disclose is necessary to make *active* concealment actionable fraud") (emphasis added).

\* \* \*

For the reasons stated above, the Grand Jury's Indictment more than sufficiently charges that Metts conspired to violate a variety of federal criminal laws; to defraud the government by impeding, impairing, defeating, and obstructing government immigration function; and to harbor, conceal, and shield from detection illegal aliens. Metts agreed with friends to affirmatively assist certain detained illegal aliens by obstructing the identification and processing of those aliens. This was an agreement to take active steps to interfere and obstruct so as to conceal and harbor certain illegal aliens. The agreement to act with which Metts is charged does not depend on the existence of the MOA and does not constitute mere inaction. Nor does the MOA provide Metts with immunity for his conspiratorial agreement to affirmatively obstruct and impede the identification and processing of certain illegal aliens. Metts' motion to dismiss should be rejected.

Respectfully Submitted,

WILLIAM N. NETTLES
UNITED STATES ATTORNEY

s/Jay N. Richardson
Jay N. Richardson (ID# 9823)
James Hunter May (ID# 11355)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
November 20, 2014                        (803) 929-3000