THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| United States of America, | ) | Criminal No.: 3:14-429-TLW |
| | ) | |
| v. | ) | **Defendant's Reply to Government's** |
| | ) | **Motion for an Order Concerning Privilege** |
| James R. Metts, | ) | **of General Counsel of Lexington County** |
| | ) | **Sheriff's Department** |
| Defendant, | ) | |

In the above captioned case, the government has requested that the Court compel the testimony of John Tate, former Lexington County Sheriff's Department general counsel. Mr. Tate does not wish to testify, believing that the information gained from his professional relationship with Sherriff Metts falls under the attorney-client privilege. The privilege exists to foster full and frank exchange between an attorney and his client. Although the privilege is applied differently to government attorneys, the fundamental concern remains paramount. Moreover, consistent application is necessary for the privilege to serve its intended purposes, and permitting a successor to waive the privilege would undermine its function. Consequently, the Court should find that attorney-client privilege applies in the present instance and refuse to compel Mr. Tate's testimony.

**Background**

Mr. Tate served as general counsel for the Lexington County Sheriff's Department during a portion of the defendant's tenure as sheriff. The two regularly discussed legal matters that directly impacted the Sheriff's Department and decisions made by the defendant in the course of

1

performing his duties as sheriff. In compliance with the South Carolina Rules of Professional Conduct, Mr. Tate has kept the substance of these interactions in strict confidence. *See* South Carolina Rules of Professional Conduct 1.6(a), 1.9(c)(2). Lewis McCarty, the defendant's successor at the Lexington County Sheriff's Department, claims that he has the authority to waive the privilege on behalf of the defendant and has attempted to do so via a document submitted by the government.

**Argument**

Under the Federal Rules of Evidence, "the common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege." Fed. R. Evid. 501. The Supreme Court recognizes the privilege's long history in common law as well as its important role in "encourag[ing] full and frank communication between attorneys and their clients and thereby promot[ing] broader public interests in the observance of law and administration of justice." *Upjohn v. United States*, 449 U.S. 383, 389 (1981) (*citing* 8 J. Wigmore, Evidence §2290); *see also Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998). Only with such full and frank discussion, can an attorney adequately perform his role within the judicial system by providing "fully informed legal advice." *In re John Doe, Inc.*, 13 F.3d 633, 635-36 (2d Cir. 1994). Consequently, "courts have . . . concluded that a consistent application of the privilege over time is necessary to promote the rule of law by encouraging consultation with lawyers, and ensuring that lawyers, once consulted, are able to render to their clients fully informed legal advice." *In re: Grand Jury Investigation*, 399 F.3d 527, 531 (2d Cir. 2005). The attorney-client privilege, more so than other forms of privilege, requires a consistent application in order to prevent the degradation of our legal system.

To achieve its purpose, a narrow application of the attorney-client privilege must only permit those exceptions which are "consistent with the logic of its principle." *In re Grand Jury Proceedings*, 727 F.2d 1352 (4th Cir. 1994) (citing *In re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir. 1979)) (internal quotations omitted). Drawing on the long history of the attorney-client privilege, the Fourth Circuit has provided clear guidelines for its application in *National Labor Relations Board v. Harvey*:

> "The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

*National Labor Relations Board v. Harvey*, 349 F.2d 900, 904 (4th Cir. 1965) (quoting *United States v. United Shoe*, 89 F.Supp. 357, 358 (D. Mass. 1950)). The government does not dispute that the defendant's communication with Mr. Tate falls within the rubric of attorney-client privilege laid out in *NLRB v. Harvey*. Rather, the government asserts that the privilege should not be recognized in a criminal trial or when a successor claims to waive it. This is not a narrow application of attorney-client privilege; it is an argument for exceptions which undermine the fundamental logic of the principle. *See NLRB v. Harvey¸* 349 F.2d 900 (4th Cir. 1965); *In re Grand Jury Proceedings*, 727 F.2d 1352 (4th Cir. 1994).

The specific question facing the Court – whether a defendant can claim attorney-client privilege for communication with a government attorney in a criminal trial when the defendant's successor claims to have waived that privilege – has not been addressed by the Fourth Circuit. The most recent appellate court to consider the status of attorney-client privilege for government

attorneys was the Second Circuit. *In re: Grand Jury Investigation*, 399 F.3d 527 (2d Cir. 2005). In its decision, the Second Circuit found that the consistent application of the attorney-client privilege included its recognition in criminal cases. *Id.* Reasoning that unnecessary exceptions would have a chilling effect on the full and frank communication between attorneys and clients, it refused to carve out an exception like that proposed by the government. *Id.* The government claims that public policy warrants an exception in criminal cases lest the privilege "obscure the truth finding function of the legal system." Government's Motion for an Order Concerning Privilege of General Counsel of Lexington County Sheriff's Office (Government's motion), p. 4. Yet, permitting such an exception, particularly in a high profile case, would disproportionally affect the ability of attorneys to provide clients with competent legal advice. According to the Supreme Court, "[T]he loss of evidence admittedly caused by the privilege is justified in part by the fact that without privilege, the client may not have made such communications in the first place." *Swidler & Berlin v. United States*, 524 U.S. 399 (1998) (citing *Jaffee v Redmond*, 518 U.S. 1, 12 (1996); *Fisher v. United States*, 425 U.S. 391, 403 (1976)). The government, and the Court, has other means to determine the truth without endangering the attorney-client relationship.

In an alternative argument, the government claims that the defendant's successor, Sheriff McCarty, has adequately waived the attorney-client privilege. Government's motion, p. 7. This presumes that Sheriff McCarty has the authority to waive the attorney-client privilege. There is no precedent in the Fourth Circuit, or elsewhere, to suggest that an individual who succeeds an elected official can waive the attorney-client privilege of his predecessor. The cases cited by the government refer to instances of corporate in-house attorneys, where the corporate entity determined that a former employee did not fall under its attorney-client privilege. *Id.*

Analogizing these instances to the present case obscures the function of the attorney-client privilege and minimizes the role of government attorneys. It deemphasizes the significance the Supreme Court placed on attorney-client privilege when it ruled that the privilege survived even the client's death. *Swidler & Berlin v. United States*, 524 U.S. 399 (1998). A government official, particularly a sheriff, requires reliable legal counsel in order to carry out the duties of his office. For that counsel to be effective, the communication must be candid. The possibility that a successor, and a potential political rival, could waive the attorney-client privilege would have a substantial chilling effect and greatly inhibit the ability of both the sheriff and the government attorney to do their jobs.

Consequently, the defendant urges the Court to recognize the attorney-client privilege in the present instance and not require Mr. Tate's testimony.

Respectfully submitted,

s/*Sherri A. Lydon*
Sherri A. Lydon (#3034)
Lydon Law Firm
1529 Laurel Street
Columbia, South Carolina 29201
(803) 753-1592

s/*Scott N. Schools*
Scott N. Schools (Federal ID# 4985)
Moore and Van Allen
78 Wentworth Street
Charleston, South Carolina 29401
(843) 579-7031

Attorneys for Defendant James R. Metts

December 29, 2014